AMERICAN CHARITIES FOR REASON-
ABLE FUNDRAISING REGULATION,
INC., the Creative Advantage, Inc., and
Norman W. Leahy, Plaintiffs,

v.

PINELLAS COUNTY, a political subdivi-
sion of the State of Florida, Nugent
Walsh, as chairperson of the Charitable
Solicitations Board of Pinellas County,
and Sheryl Lord, as Director of Consum-
er Protection of Pinellas County, Defen-
dants.

No. 97–2058–CIV–T–17B.

United States District Court,
M.D. Florida,
Tampa Division.

April 15, 1998.

Alison M. Steele, George Karl Rahdert,
Rahdert & Anderson, Cynthia L. Hain, Rah-
dert, Anderson, McGowan & Steele, P.A., St.
Petersburg, FL, Clifford Perlman, Seth Perl-
man, Perlman & Perlman, New York, NY,
Geoffrey W. Peters, Law Office of Geoffrey
W. Peters, Vienna, VA, for Plaintiffs.

Carl E. Brody, Jr., Pinellas County Attor-
ney's Office, Clearwater, FL, for Defendants.

### ORDER ON DEFENDANTS' MOTION TO DISMISS

KOVACHEVICH, Chief Judge.

This cause previously came before the Court on a motion to dismiss the complaint (Docket No. 13), with attachments (Docket No. 19), filed by Defendants, PINELLAS COUNTY, a political subdivision of the State of Florida (hereinafter County), NUGENT WALSH, as chairperson of the Charitable Solicitations Board of Pinellas County (hereinafter Walsh), and SHERYL LORD, as Director of Consumer Protection of Pinellas County (hereinafter Lord). Plaintiffs, AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC. (hereinafter American), THE CREATIVE ADVANTAGE, INC. (hereinafter Creative), and NORMAN W. LEAHY (hereinafter Leahy), filed a responsive memorandum, with attachments (Docket No. 16). This Court denied Defendants' motion to dismiss as to Defendants WALSH and LORD in its Order dated March 4, 1998 (Docket No. 24). At that time, the Court deferred ruling on the issue of whether Defendant, PINELLAS COUNTY, is entitled to Eleventh Amendment Immunity, and directed the parties to submit briefs to the Court on that issue.

### I. BACKGROUND

Plaintiffs brought this case under 42. U.S.C. § 1983, alleging that the Defendants deprived them of their constitutional rights within the meaning of that statute. Their claims are based on an ordinance adopted by Pinellas County concerning the solicitations of charitable contributions. Plaintiffs sought declaratory and injunctive relief from enforcement of the ordinance, as well as attorney's fees.

Defendant, Pinellas County, moved to dismiss Plaintiffs' complaint on two grounds. First, that the Eleventh Amendment of the United States Constitution acts as a jurisdictional bar to the Court's review of this matter pursuant Rule 12(b)(2) of the Federal Rules of Civil Procedure. Second, that Plaintiffs bear the burden of proving that the County is not acting as a proxy for the state.

### II. STANDARD OF REVIEW

In deciding a motion to dismiss, this Court will examine only the four (4) corners of the complaint. *See Rickman v. Precisionaire, Inc.*, 902 F.Supp. 232 (M.D.Fla.1995). A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that Plaintiffs can prove no set of facts that would entitle them to relief. *See Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, in ruling on a motion to dismiss, a trial court is required to view the complaint in the light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Howry v. Nisus, Inc.*, 910 F.Supp. 576 (M.D.Fla.1995).

### III. DISCUSSION

#### A. Eleventh Amendment

Defendant, Pinellas County, contends that this Court should dismiss Plaintiffs' complaint because the Eleventh Amendment of the United States Constitution acts as a jurisdictional bar to this Court's review of the matter pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure. Defendant Pinellas County further contends that the Eleventh Amendment should bar the suit brought by Plaintiffs because the county is acting in stead of the state in the regulation of charitable solicitations, pursuant to Section 2.04(*o*), Pinellas County Charter, Laws of Florida, Chapter 88–458, § 1, Resolution No. 88–496, 12–6–88. However, Plaintiffs have alleged in their Complaint that the Pinellas County Ordinance does not replace legislation by the state concerning charitable solicitations, but instead it acts concurrently with the state legislation as a separate regulation.

This Court in its previous Order dated March 4, 1998 (Docket No. 24), set forth those factors from *Hufford v. Rodgers*, 912 F.2d 1338, 1341 (11th Cir.1990), that it deemed to be dispositive on the issue of whether Defendant Pinellas County was acting on behalf of the state and, therefore, entitled to Eleventh Amendment immunity. This Court has reviewed all the evidence

presented by both parties, including case law, and applies the facts to these four factors.

The first factor is how state law defines the entity. *Id.* This Court is not persuaded by the Defendant's argument on this point, but instead finds the Plaintiffs' reasoning to be more persuasive. The Florida Constitution Art. VIII, Sec. 1 provides that: "[t]he state shall be divided by law into political subdivisions called counties." Defendant Pinellas County is a charter county, and as such, it "shall have all power of local self-government not inconsistent with general law, or with special law." FLA. CONST. art. VIII, § 1(g).

Defendant misapplies the holding in *City of Hialeah v. Martinez,* 402 So.2d 602 (Fla.3d Dist.Ct.App.1981) to the facts of the present case. In *City of Hialeah,* the court held that if a special law is in conflict with a general law, then the general law supersedes the special law. *See id.* at 605. The operative words of the court's holding are "in conflict with." That is not the situation in the present case. The State of Florida has adopted a regulatory scheme for the regulation of the solicitation of charitable contributions. *See* FLA. STAT. §§ 496.401–496.426. This regulatory scheme specifically states that "[s]ections 496.401–496.424 do not preempt more stringent county or municipal provisions or restrict local units of government from adopting more stringent provisions." *See.* FLA. STAT. § 496.421 (1995). The Pinellas County Charter § 2.04(o) grants power to the county for the "[i]mplementation of programs for regulation of charitable solicitations." However, this provision does not require Pinellas County to implement programs for regulation of charitable solicitations, but merely grants Pinellas County the power to do so. Therefore, these two laws are not in conflict with each other and the court's holding in *City of Hialeah* is inapposite to the present case.

Defendant Pinellas County's reliance on *Pembaur v. Cincinnati,* 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) is also misguided. In fact the holding in *Pembaur* actually supports the Plaintiffs' position. In *Pembaur,* the court stated that where an entity makes a deliberate choice to adopt a specific course of action, it becomes the decision maker, and any action taken pursuant to its decision places responsibility on that decision maker. *See id.* at 481. The grant of power by the State of Florida in the Pinellas County Charter § 2.04 regarding the implementation of programs for the regulation of charitable contributions is a permissive one. The state has not required that the county regulate this area, but instead provides the county with power to do so if it desires. Therefore, the county's action to adopt specific regulations concerning the solicitations of charitable contributions is a "deliberate choice to adopt a specific course of action" and as a result, Defendant Pinellas County is a decision maker, and is responsible for its decision. Accordingly, the first factor of *Hufford* requires a finding in favor of the Plaintiffs, since Defendant Pinellas County has not established through this factor, that the county was acting on behalf of the state.

The second factor to consider is what degree of control the state maintains over the entity. Once again, Defendant Pinellas County's arguments are not persuasive on this point. Both the Florida Constitution and the Florida Statute grant broad home rule power to counties. *See* FLA. CONST. art. VII, § 1 and FLA. STAT. ch. 125.01. Additionally, Section 496.421 of the Florida Statutes authorizes local governments to pass more restrictive regulations not inconsistent with the state law requirements. However, this provision does not provide for any type of supervision of these regulations by the state. In fact, Defendant Pinellas County has provided no evidence in its brief to establish that the state is in any direct way supervising the county. The county does not even allege that it has any reporting requirements to the State of Florida concerning these regulations.

Defendant Pinellas County makes much of the fact that the State of Florida has directed Pinellas County to enact regulations concerning the solicitations of charitable contributions because it is unable to effectively do so at a state level. However, there is nothing in the law that indicates in any way that the state is unable to regulate charitable contributions at the state level. That is because

the State of Florida does regulate the solicitations of charitable contributions at the state level. The regulations concerning charitable solicitations enacted by Defendant Pinellas County are not concurrent with the state's regulation in this area, but instead are separate and distinct. Ironically, this fact is acknowledged by Defendant Pinellas County's own employee.

Plaintiffs wrote to Defendant Pinellas County on April 15, 1997, to ascertain whether it had to register with the county under the Pinellas County Charitable Solicitations (Docket No. 26, Exh. B, ¶ 2). On April 25, 1997, Plaintiffs received a phone call from John Wood in regards to Plaintiffs' letter to the Regulatory Section of the Pinellas County, Florida Department of Consumer Protection. (Docket No. 26, Exh. B, ¶ 3). When Plaintiffs asked Mr. Wood why charities have to register with Pinellas County, even if such charities have already registered with the State of Florida, Mr. Wood stated that his Department does not have anything to do with registration requirements for the State of Florida, nor does it coordinate with the state. (Docket No. 26, Exh. B, ¶ 7). Additionally, Mr. Wood stated that even if charities and/or Professional Fundraising Consultants register with the state, they still have to register with his department. (Docket No. 26, Exh. B, ¶ 7). Therefore, the second factor of *Hufford* requires a finding in favor of the Plaintiffs, since Defendant Pinellas County has not established that the state exercises sufficient control over the county.

The third factor which the Court must consider is where the funds for the entity are derived from. Section 125.01 of the Florida Statutes grants to counties the power to tax and the power to borrow money. Defendant Pinellas County requires all individuals and corporations involved the solicitation of charitable contributions in Pinellas County, to register with the county and pay a fee. The fees received by the county are undoubtedly used to cover the costs of administering the ordinance. Additionally, there is no provision in either the state or county charitable solicitations law which provides for the state to fund the Pinellas County Charitable Solicitations Board.

■ Defendant Pinellas County concedes in its brief that the county derives its funds from its taxing authority, and only receives some funding from the State. Even assuming that Defendant Pinellas County receives some funds from the general state revenues, this does not transform the local government unit into an "arm of the state." *See Magula v. Broward General Medical Center*, 742 F.Supp. 645, 649 (S.D.Fla.1990). Therefore, the third factor requires a finding in favor of the Plaintiffs, since Defendant Pinellas County has not established that the county derives its funding from the state.

The last factor in *Hufford* to consider is the question of who is responsible for the judgment against the entity. The Eleventh Circuit has held that the "Eleventh Amendment protection is available only if satisfaction of the judgment sought against the state 'agency' *must* under all circumstances, be paid out of state funds." *Travelers Indemnity Co. v. School Board of Dade County*, 666 F.2d 505, 509 (11th Cir.1982) (emphasis in original). However, there are no facts in this case to establish that the State of Florida would be responsible for paying a judgment in this action. In fact, Defendant admits that the county would be responsible for paying a judgment, and not the state.

Although the Defendant Pinellas County concedes in its brief that the county will be responsible for a judgment against it in this case, it attempts to deminimize the importance of this factor by drawing an analogy to *Ristow v. South Carolina Ports Authority*, 27 F.3d 84 (4th Cir.1994). In *Ristow*, the court found that because of the close relationship between the Ports Authority and the state, and the fact that the state "has used the treasury of the Ports Authority as a conduit to accomplish the aims of the government," this element supports favoring Eleventh Amendment immunity. *Id.* at 88. However, Defendant fails to recognize the critical facts that led the Fourth Circuit to this finding.

First, that the Ports Authority was created through the use of state funds and received annual allocations from the general assembly. Second, and most importantly, that the State was entitled to "any and all net revenues not

necessary or desirable for the operation of the business." *Id.* Defendant does not allege, nor could it do so, that the Pinellas County Charitable Solicitations Board was created through the use of state funds or that it receives annual allocations from the general assembly. Likewise, Defendant cannot establish that the State of Florida has the right to "any and all net revenues not necessary or desirable for the operation of the business." *Id.* Therefore, Defendant's reliance on the court's finding in *Ristow* is seriously misguided. Therefore, the fourth factor requires a finding in favor of Plaintiffs, since Defendant admits that it is financially responsible for a judgment and there are no facts to establish otherwise.

The Court in its Order dated March 4, 1998 (Docket No. 24), addressed another factor that it deemed to be persuasive in determining whether Defendant is a state actor or agency, and that was the issue of who is representing the entity in the lawsuit. *See Houck & Sons, Inc. v. Transylvania County,* 852 F.Supp. 442, 450 (W.D.N.C.1993).

The *Houck* case dealt with two county directors who were represented by the state Attorney General. The Court in *Houck* found that it was strongly persuasive that these directors were acting on behalf of the state, since it was against the state's financial interest for the attorney general to represent them. The present case differs from *Houck* in that the Defendant is represented in this action by the county attorney, and not the state attorney general. Additionally, as pointed out by Plaintiffs in their brief, the county attorney is directly responsible to the county, and not the state pursuant to section 4.02 of the Pinellas County Charter. Based on the foregoing reasons, this Court finds that the Defendant Pinellas County is not "an arm of the state" and therefore is not entitled to immunity under the Eleventh Amendment. Accordingly, it is

**ORDERED** that the portion of Defendants' motion to dismiss relating to Defendant, PINELLAS COUNTY'S entitlement to Eleventh Amendment immunity (Docket No. 13) be **DENIED.**